Annick M. Persinger (CA Bar 272996)
apersinger@tzlegal.com
**TYCKO & ZAVAREEI LLP**
10880 Wilshire Boulevard, Suite 1101
Los Angeles, California 90024
Tel. 510.254.6806

Gregory Coleman (*pro hac vice to be filed*)
gcoleman@gregcolemanlaw.com
**COLEMAN LAW, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel. 865.247.0080

*Counsel for Plaintiffs and the Proposed Class*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | |
|---|---|
| JASON M. CORNELLIER, MICHAEL J. FRITZ, and DEAN A. SWEBERG, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., a Delaware corporation, RIVIAN, LLC, a Delaware limited liability company, and RIVIAN AUTOMOTIVE, LLC, a Delaware limited liability company,<br><br>     Defendants. | Case No.: _____<br><br>CLASS ACTION COMPLAINT<br><br>ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiffs Jason M. Cornellier, Michael J. Fritz, and Dean A. Sweberg (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendants and Rivian, LLC, Rivian Automotive, Inc., and Rivian Automotive, LLC (collectively, "Rivian" or "Defendants") and allege as follows:

## INTRODUCTION

1. Plaintiffs bring this consumer class action to hold Rivian accountable for years of false, deceptive, and misleading statements concerning its technology and the autonomous driving capabilities of its first-generation R1T and R1S vehicles (the "Gen 1 Vehicles"). Beginning in or around November 2018 and continuing through at least March 2023, Rivian explicitly marketed its Gen 1 Vehicles as capable of "Level 3 autonomy" and "true hands-free driving" through its "Driver+" system, and represented to consumers that such functionality, whether available at the time of delivery or through over-the-air software updates, would be standard on every Rivian vehicle.

2. But Rivian's representations were simply untrue. In reality, Rivian manufactured its Gen 1 Vehicles without the hardware, cameras, sensors, and compute to enable hands-free driving and/or Level 3 autonomous operation. Indeed, the Driver+ system was never designed to support the type of autonomous driving Rivian claimed its vehicles could perform. No software update—no matter how sophisticated—will enable its Gen 1 Vehicles to perform as advertised. Rivian unquestionably knew that its Gen 1 Vehicles would never be capable of Level 3 autonomy or "true hands-free driving" yet continued to tout the supposed capabilities of its vehicles to induce consumers to purchase them.

3. Rivian made these representations over the course of 5 years through a coordinated nationwide marketing campaign that included: statements on its website

1
CLASS ACTION COMPLAINT

and online marketing materials; public statements by Rivian's founder, RJ Scaringe; in-person statements by Rivian's sales team; and representations made by Rivian representatives in response to customer inquiries and at company-sponsored events.



RJ Scaringe, Rivian CEO, making promises regarding autonomous driving capabilities in October 2022[1]

4.     Rivian directed its marketing scheme at consumers throughout the United States (and Canada). Rivian's marketing reached and influenced the Plaintiffs and Class members and induced them to purchase Gen 1 Vehicles at prices materially inflated by Rivian's false promises.

5.     Plaintiffs are such consumers. In reasonable reliance on Rivian's representations regarding Driver+ system and the supposed autonomous driving capabilities of the Gen 1 Vehicles, each Plaintiff purchased (or leased) a Gen 1 R1T or R1S during the relevant period. None of them would have purchased a Gen 1

---

[1] *See* Rebecca Bellan, "Rivian's RJ Scaringe on the future of micromobility, Avs and the supply chain," *TechCrunch* (October 19, 2022), *available at https://techcrunch.com/2022/10/19/rivians-rj-scaringe-on-the-future-of-micromobility-avs-and-the-supply-chain/?fbclid=IwY2xjawROGq1leHRuA2FlbQIxMQBicmlkETFVOEVlM3o2b0hHWER6S1h6c3J0YwZhcHBfaWQQMjIyMDM5MTc4ODIwMDg5MgABHoxk0GzqgHBYSn-JM0DaODGV6i_bCaY9bV5DlhpSlL6fm5qHKOh2s9YVjr2G_aem_otMhRFQhN_qbFv45dx6FvQ*

CLASS ACTION COMPLAINT

Vehicle—or certainly would not have paid what they did—had Rivian truthfully disclosed that its vehicle would never be capable of true hands-free autonomous driving.

6.      Plaintiffs and the Class did not receive what they paid for. Instead, they received vehicles that are substantially less capable, and materially less valuable, than Rivian represented them to be. Plaintiffs and the Class have been damaged as a result.

7.      Plaintiffs bring this action on behalf of themselves and a proposed nationwide class of consumers who purchased or leased a new Rivian with the Driver+ platform and technology but never received the level of autonomous driving promised to them by Rivian. Plaintiffs assert claims against Rivian for fraud, negligent misrepresentation, and unjust enrichment on behalf of the Class. Plaintiffs further bring consumer protection claims for violations of numerous state law consumer protection statutes, including but not limited to the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*), the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*), the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*). Plaintiffs' requested relief includes injunctive relief, restitution of the amount Plaintiffs and the Class members paid for technology Rivian promised but never delivered, appropriate equitable damages, and punitive damages to punish Rivian for years of deceptive and misleading marketing and to deter similar behavior in the future.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because the proposed class consists of at least 100 members; the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and minimal diversity exists in that at least one member of the proposed Class is a citizen of a state different from at least one Defendant.

CLASS ACTION COMPLAINT

9. This Court has personal jurisdiction over Defendants because Defendants are headquartered in, and maintain their principal place of business at, 14600 Myford Road, Irvine, California 92606, which is located in this District. Defendants designed, developed, and directed the marketing campaign at issue in this action from their California headquarters; Defendants market, sell, and deliver Class Vehicles throughout California; and Defendants conduct substantial and continuous business in California.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants reside in this District, and under § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

11. Additionally, this matter is properly before this Court as Rivian's General Terms and Conditions, which are published on its website, contain a Choice of Forum clause requiring that any disputes "shall be litigated exclusively in the United Stated District Court for the Central District of California."[2]

## PARTIES

**A. Plaintiffs**

## California

12. Plaintiff Michael J. Fritz ("Fritz") is a resident of San Diego California and has been a citizen of California at all times relevant to this action. Fritz ordered a Gen 1 R1S in 2021 and paid Rivian a $1,000 deposit after researching, reviewing and relying on Rivian's representations concerning the Gen 1 Vehicles' self-driving capabilities. More specifically, Fritz analyzed and evaluated Rivian's official corporate disclosures, its IPO S-1 registration statement filed with the U.S. Securities and Exchange Commission in 2021, Rivian's website, and Rivian's official YouTube channel and Instagram page—all of which contain express representations by Rivian that its Gen 1 vehicles are capable of Level 3 autonomous driving.

---

[2] https://rivian.com/legal/terms#dispute

CLASS ACTION COMPLAINT

13.     Additionally, Fritz watched numerous interviews and presentations given by Rivian's founder, RJ Scaringe, during which he claimed that all Rivian vehicles would have self-driving capabilities. This includes the November 2018 presentation ("Rivian Unveiling Presentation") where Scaringe first unveiled prototypes of Rivian's new R1 vehicles. Scaringe explicitly represented during the presentation that all Rivians would be configured with two front-facing lidar sensors and other sophisticated hardware that would enable the vehicles to enjoy unprecedented levels of self-driving capabilities.

14.     Fritz attended a Rivian's First Mile Event on or about January 20, 2023 in San Diego, California where he was able to test drive a Gen 1 Vehicle. During the test drive, Fritz discussed the autonomous driving capabilities of Rivian's vehicles with a Rivian representative and was told, in no uncertain terms, that Rivian's self-driving capabilities were "parallel to, if not better than" Tesla's Full Self-Driving (FSD) system. The Rivian representative further explained to Fritz that all Rivian vehicles would be capable of Level 3 autonomous driving at the time of delivery or would be upgradable to Level 3 autonomy shortly thereafter through over-the-air software updates.

15.     In late January 2023, Rivan advised Fritz that the delivery estimate of his R1S was being pushed back an additional year. Fritz cancelled his order and located a vehicle on his own.

16.     Fritz purchased a 2023 R1S on May 5, 2023. He paid approximately $97,000 for his vehicle. Fritz has at all relevant times maintained a Rivian Connect+ subscription and pays Rivian a monthly fee of approximately $14.99.

17.     Fritz formally opted-out of the Dispute Resolution—Arbitration Agreement and Class Action Waiver provision contained in the General Terms found on Rivian's website and in its standard purchase agreement.

CLASS ACTION COMPLAINT

18. Fritz's decision to purchase his Rivian was made based upon his understanding that the vehicle would have true hands-free, Level 3 autonomous driving self-driving capabilities at the time of delivery or that such capabilities would subsequently become available through over-the-air software updates. But for Rivian's materially false and misleading representations and promotion of the Gen 1 Vehicles, Fritz would not have purchased his Rivian R1S. In fact, the Level 3 hands-free driving was a prerequisite for Fritz.

### Michigan

19. Plaintiff Jason M. Cornellier ("Cornellier") is a resident of South Lyon, Michigan and has been a citizen of Michigan at all times relevant to this action. Cornellier preordered a Gen 1 R1S in 2019 and paid Rivian a $1,000 deposit after conducting extensive research about the vehicle by, among other things, reading articles and interviews of RJ Scaringe in various digital media publications such as CNET and TechCrunch, evaluating Rivian's website, and viewing presentations by Rivian executives. For example, Cornellier livestreamed the November 2018 Rivian Unveiling Presentation during which RJ Scaringe promised that his vehicles would have unprecedented self-driving capabilities. Cornellier also studied Rivian's website, which contained an explicit representation that all Rivian vehicles will be capable of true hands-free, Level 3 autonomous driving.

20. Cornellier purchased a 2023 R1S from Rivian on February 13, 2023 and accepted delivery of the vehicle the following day. He paid more than $81,000 for his vehicle and has at all relevant times paid Rivian a monthly fee of approximately $14.99 for its Connect+ subscription.

21. Cornellier formally opted-out of the Dispute Resolution—Arbitration Agreement and Class Action Waiver provision contained in the General Terms found on Rivian's website and in its standard purchase agreement.

CLASS ACTION COMPLAINT

22.     Cornellier's decision to purchase his Rivian was made, in large part, based upon his understanding that the vehicle would either have true hands-free, Level 3 autonomous driving self-driving capabilities at the time of delivery or that such capabilities would become available at a later date through subsequent over-the-air software updates. But for Rivian's materially false and misleading representations and promotion of the Gen 1 Vehicles, Cornellier would not have purchased his Rivian R1S or would have paid significantly less for it.

**Wisconsin**

23.     Plaintiff Dean A. Sweberg ("Sweberg") is a resident of Fitchburg, Wisconsin and has been a citizen of Wisconsin at all times relevant to this action. Sweberg preordered a Gen 1 R1S in 2020 and paid Rivian a $1,000 deposit after researching, reviewing and relying on Rivian's online and other public statements concerning the Gen 1 Vehicles' self-driving capabilities. In particular, and among other things, Sweberg was persuaded to order a Rivian R1S after: (i) watching a November 2018 video presentation by Rivian's founder, R.J. Scaringe, in which Scaringe unveiled Rivian's new vehicles and represented that all of its vehicles would be capable of an unprecedented level of self-driving; and (ii) reviewing and evaluating the representations on Rivian's website confirming that all Rivians would be capable of Level 3 autonomous driving.

24.     Sweberg purchased a 2022 R1S from Rivian on December 8, 2022 and accepted delivery of the vehicle on December 22, 2022. He paid more than $83,000 for his vehicle and also pays Rivian an annual fee of approximately $149.99 for the Rivian Connect+ subscription.

25.     Sweberg formally opted-out of the Dispute Resolution—Arbitration Agreement and Class Action Waiver provision contained in the General Terms found on Rivian's website and in its standard purchase agreement.

7

CLASS ACTION COMPLAINT

26.     Sweberg's decision to purchase his Rivian was made, in large part, based upon his understanding that the vehicle would have certain self-driving capabilities at the time of delivery but that full hands-free, Level 3 autonomous driving would become available shortly thereafter through subsequent over-the-air software updates. But for Rivian's materially false and misleading representations and promotion of the Gen 1 Vehicles, Sweberg would not have purchased his Rivian R1S or would have paid significantly less for it.

### B.     Defendants

27.     Defendant Rivian Automotive, Inc. is a Delaware corporation with its principal place of business at 14600 Myford Road, Irvine, California 92606. Rivian Automotive, Inc. is the publicly traded parent company of the Rivian corporate family, trading on NASDAQ under the ticker symbol "RIVN." Rivian Automotive, Inc., together with its subsidiaries, designs, develops, manufactures, markets, distributes, and sells electric vehicles under the "Rivian" brand, including the Gen 1 R1T and R1S.

28.     Defendant Rivian, LLC is a Delaware limited liability company with its principal place of business at 14600 Myford Road, Irvine, California 92606. Rivian, LLC is a direct or indirect subsidiary of Rivian Automotive, Inc. and is identified as the contracting seller in the applicable consumer purchase agreements with Rivian.

29.     Defendant Rivian Automotive, LLC is a Delaware limited liability company with its principal place of business at 14600 Myford Road, Irvine, California 92606, and a direct or indirect subsidiary of Rivian Automotive, Inc. According to the National Highway Traffic Safety Administration ("NHTSA") Manufacturer Registration records, Rivian Automotive, LLC is the registered vehicle manufacturer for Rivian's R1T and R1S vehicle lines.

30.     Defendants designed, developed, and directed the marketing scheme at issue in this action from their Irvine, California headquarters. Defendants also operate

CLASS ACTION COMPLAINT

a vehicle manufacturing facility located at 100 North Rivian Motorway, Normal, Illinois 61761, at which Defendants design, test, and manufacture the Gen 1 Vehicles.

31.   At all relevant times, Defendants acted in concert with one another and as agents, principals, joint venturers, partners, alter egos, and/or co-conspirators of one another in connection with the conduct alleged herein. Each Defendant participated in, ratified, and benefited from the wrongful conduct alleged, and each is jointly and severally liable for the harm caused to Plaintiffs and the Class.

## FACTUAL ALLEGATIONS

### A.   The Technology of Autonomous Vehicles

32.   SAE International ("SAE"), which is a globally recognized professional association and standards development organization for engineering professionals that serves a variety of industries, has established a classification system for automated driving systems that defines six levels of driving automation, ranging from Level 0 (no automation) to Level 5 (full automation).[3]



---

[3]https://www.sae.org/standards/j3016_202104-taxonomy-definitions-terms-related-driving-automation-systems-road-motor-vehicles

CLASS ACTION COMPLAINT

33.    Under the SAE's taxonomy, Level 3 automation—sometimes referred to as "conditional driving automation" or "hands-off" driving—permits the vehicle to perform all aspects of the dynamic driving task under certain conditions, while a human driver must be available to resume all aspects of driving if the system can no longer operate.[4]







34.    Autonomous driving technologies at all SAE levels require vehicle-mounted sensors. Level 3, hands-off autonomous operation requires a sophisticated suite of hardware, including but not limited to high-resolution cameras, radar sensors, lidar (*i.e.*, light detection and ranging) systems, high-performance onboard computing, and redundant safety systems. The hardware necessary to enable Level 3

---

[4]https://www.mobileye.com/blog/level-3-autonomy-explained/;
https://www.nhtsa.gov/vehicle-safety/automated-vehicles-safety

CLASS ACTION COMPLAINT

autonomy must be designed into the vehicle at the time of manufacture; it cannot be retrofitted or enabled through software updates alone.

35.     Advanced driver assistance and autonomous driving technology is a material factor for many consumers in deciding whether to purchase a new electric vehicle, and consumers place a significant premium on vehicles that are marketed as offering such capabilities. Automakers are well aware of this fact and prominently feature Advanced Driver Assistance Systems (ADAS) and autonomous driving claims in their marketing campaigns to induce consumers to purchase their vehicles.

**B.     Rivian Markets its Gen 1 Vehicles and Driver+ System**

36.     Rivian (initially called Mainstream Motors) was founded in 2009 by RJ Scaringe for the purpose of developing electrified motor vehicles. In December 2017, Rivian revealed its initial two products, the R1T (pick-up) and R1S (SUV), and later unveiled prototypes of those vehicles in November 2018 at the Los Angeles Auto Show.

37.     On or about November 30, 2018, as part of the Rivian Unveiling Presentation, RJ Scaringe gave a detailed presentation in which he outlined and discussed his vehicles' technology and features. In particular, Scaringe explicitly (and falsely) represented that the Gen 1 Vehicles would be built with "network architecture" and a "platform":

> that allows a level of connectivity and *self-driving* that's unlike any other vehicle you've seen in this space. This vehicle integrates cameras, radar, high precision GPS, *two lidars* sitting in the front of the vehicle. So we can deliver a level of *off-road self-driving* and *on-road self-driving* that we haven't seen in the market before.[5]

38.     Rivian began aggressively marketing and taking preorders of the Gen 1 R1T and R1S immediately prior to the Los Angeles Auto Show through an online marketing campaign with production scheduled to begin in 2020.

---

[5] https://www.youtube.com/watch?v=l8xy6PZnJps (emphasis added).

11

CLASS ACTION COMPLAINT

39.     Rivian, as part of its marketing campaign, directly and unequivocally represented to potential customers that *every* Rivian would be capable of *Level 3 autonomous driving*. Beginning in late 2018 through at least October 2020, Rivian's website stated:

> WE'LL TAKE THE WHEEL, YOU TAKE IN THE  SCENERY.
> Level 3 autonomy will be available on every Rivian vehicle. By allowing you to take your hands off the wheel and your eyes off the road, you'll get to see more of the world as you cruise through it.[6]



40.     Rivian, during this same period, also hyped the Gen 1 Vehicles as having technologically advanced hardware system, claiming (falsely) that "Our redundant sensor suite features lidar, radar, cameras and ultrasonic sensors, providing multiple perception modalities."[7]



---

[6]https://web.archive.org/web/20200110225247/https://rivian.com/technology/.    Plaintiffs    have confirmed that the representation in question was contained on Rivian's website as of October 2020 and reasonably believe that this same representation was included on Rivian's website beginning in late 2018.
[7] https://web.archive.org/web/20200110225247/https://rivian.com/technology/

CLASS ACTION COMPLAINT

41.    In or around November 2020, Rivian named its driver assistance system "Rivian Driver+" and marketed the system as providing *complete hands-off driving capabilities*. More specifically, since November 2020, Rivian has and continues to represent on its website:[8]

> Rivian Driver+ is standard on every vehicle we build. Delivering true hands-free driving assistance along with our full set of safety features, the system continually adds functionality through over-the-air updates. By making Driver+ standard, our goal is to make driving safer, easier and less stressful for everyone.

***

> Driver+ is powered by two redundant platforms, 12 ultrasonic sensors, 10 exterior cameras, 5 radars and high precision GPS…Every Rivian vehicle will include our complete hardware package and all Driver+ enhancements will be provided over-the-air at no expense.[9]

---

[8] https://stories.rivian.com/time-to-build\
[9] https://stories.rivian.com/time-to-build;
https://web.archive.org/web/20230302062253/https:/rivian.com/r1s.

13

CLASS ACTION COMPLAINT

42.    In addition to the express representations contained on Rivian's website, Rivian's salespeople and other company representatives routinely told potential customers that the Gen 1 Vehicles' sophisticated hardware system and Driver+ platform would support Level 3 "hands-free" driving.

43.    For example, beginning in August 2021, Rivian held multiple regional "First Mile Event Tours" in Normal, Illinois (at Rivian's manufacturing facility), New York, San Francisco, and Los Angeles for customers who preordered a Gen 1 Vehicle. During these events, customers were specifically told by Rivian representatives that their vehicles would possess Level 3 autonomous driving capabilities as future over-the-air software updates became available.

44.    On October 1, 2021, as part of its IPO, Rivian filed its Form S-1 Registration Statement with the U.S. Securities and Exchange Commission. In the statement, Rivian represented as follows:

> We have built proprietary object fusion algorithms that bring together inputs from different sending modalities and provide output that balances the strengths of each sensor. We expect our platform's architecture will enable us to evolve and expand our Driver+ offerings to support SAE Level 3 autonomy. [10]

45.    Rivian's CEO, RJ Scaringe, publicly touted the supposed autonomous driving capabilities of the Gen 1 Vehicles through at least 2022. For example, on or about October 19, 2022, Scaringe took the stage at TechCrunch Disrupt—a premiere annual start-up conference held in San Francisco—where he stated that Rivian's Driver+ system provided "the ability to take your hands off the wheel and eyes off the road and have the vehicle drive, but there are a number of circumstances where of course you as the driver have to participate." Scaringe went on to say that while the technology for Level 4 autonomy (*i.e.*, a fully autonomous system that can drive itself

---

[10]  https://www.sec.gov/Archives/edgar/data/1874178/000119312521315537/d157488ds1a.htm,  at 124

CLASS ACTION COMPLAINT

without human assistance) already exists, Rivian's then current vehicles would be limited to Level 3 autonomy, noting "But over time, of course, as we add new sensing modalities, and as compute levels continue to rise, the ability to expand it to Level 4 is certainly there."[11]

46.   Rivian's representations concerning the autonomous driving capabilities of its vehicles were material to Plaintiffs' and Class members' purchasing decisions. Rivian knew that consumers, including Plaintiffs and the Class members, would rely on its representations in deciding whether to purchase a Gen 1 Vehicle and in deciding how much to pay for it. Rivian knowingly and purposefully made its representations to induce consumers to purchase Gen 1 Vehicles and to pay more for them than they otherwise would have paid.

**C.   Rivian's Representations Were False When Made**

47.   Rivian's representations regarding the autonomous driving capabilities of its vehicles were patently false when made. "Level 3" autonomy and "true hands-free driving" is not possible on any Gen 1 Vehicle—not at the time of purchase, not today, and not at any point in the future through over-the-air software updates or otherwise.

48.   Driver+ is a *hands-on* highway assist system comprised of adaptive cruise control, lane keeping, and other similar active safety features. But as Rivian now acknowledges, the Driver+ platform and the Gen 1 hardware, cameras, sensors, and compute were not designed to and cannot support the kind of autonomous driving that Rivian promised its Gen 1 customers.

49.   In fact, Rivian had already determined that the autonomy technology supporting the Driver+ system was a "dead end" at the time the Gen 1 Vehicles were initially launched yet purposefully withheld that information from the public for more than four years. In a recent interview with WIRED Magazine, Scaringe finally came

---

[11] *See* FN 1.

> We realized as we were launching that it was the wrong approach…So nearly the same time we launched R1, we completely reset. We realized that what we had was not going to scale. We recruited a team to design a [new] system around a data flywheel, and teach it with accumulated miles. That launched on Gen 2 in late 2024.[12]

50.    On December 11, 2025, Rivian held its inaugural "Autonomy & AI Day" where it unveiled its new "Rivian Autonomy+" platform[13] that is currently available on Gen 2 Rivians and which will form the basis for the upgraded system to be utilized by the forthcoming Gen 3 vehicles—including the new R2 models. The "Autonomy+" system consists of an updated hardware platform, a more sophisticated compute module, and more robust software architecture. One of Rivian's new features is "Universal Hands-Free" driving,[14] which is a more advanced assisted driving feature. Yet even this new system does not currently provide Level 3 autonomy or "true hands-free driving" as the system "will not stop or slow down for traffic lights or stop signs."[15]

51.    At the Autonomy & AI Day, Rivian publicly acknowledged for the first time that the Gen 1 Vehicles were manufactured *without* the sufficient hardware (including lidar and other advanced components that Rivian previously claimed were included on the Gen 1 Vehicles) and compute necessary for Level 3 autonomy or true hands-free driving. Thus, Rivian made it clear that the Gen 1 Vehicles will *never* be able to achieve that level of autonomous driving.

52.    In fact, directly contrary to Rivian's previous misrepresentations regarding the Gen 1 Vehicles' "redundant sensor suite," the advanced hardware and software necessary to attain true hands-free driving are not currently available on any

---

[12] https://www.wired.com/story/interview-with-rivian-ceo-rj-scaringe/
[13]    https://rivian.com/newsroom/article/rivian-unveils-custom-silicon-next-gen-autonomy-platform-deep-ai-integration
[14] https://rivian.com/r1s?modal=autonomy#software
[15] *Id*. at FN 2.

CLASS ACTION COMPLAINT

Rivian. Indeed, Rivian's Gen 3 vehicles, which will not be available until late 2026, will be the first Rivians to use this technology.[16]

53.    Critically, Rivian's Autonomy+ platform is not available on the Gen 1 Vehicles as they lack the necessary sensors (including lidar), cameras, and compute. Thus, it will not be possible to retrofit the Gen 1 Vehicles to enable "Universal Hands-Free" driving, let alone more sophisticated autonomous driving capabilities. The forthcoming Gen 3 hardware, including lidar and other hardware/software advances necessary for Level 3 autonomy, will also be unavailable on the Gen 1 Vehicles as they lack the necessary infrastructure to handle automated driving.[17]

54.    No software update can compensate for the absence of the appropriate hardware and compute in the Gen 1 Vehicles. Rivian knew the Gen 1 Vehicles would never be capable of "Level 3 autonomy" or "true hands-free driving" at the time those vehicles were marketed and sold. Yet Rivian knowingly made false representations regarding its vehicle's capabilities to generate consumer interest in its products, to compete with other electric vehicle manufacturers marketing similar technology (*e.g.*, Tesla), and to improve Rivian's financial condition.

55.    Rivian not only concealed and failed to disclose the truth about the autonomous driving capabilities of its Gen 1 Vehicles (or lack thereof) prior to Scaringe's admission at the Autonomy & AI Day in December 2025, but it explicitly and purposefully misrepresented the Gen 1 Vehicles' capabilities up until that time.

56.    Thus, prior to December 2025, Plaintiffs and the Class members neither knew nor had reason to believe that their vehicles would *never* be capable of true hands-free driving irrespective of any future over-the-air updates made available by Rivian.

---

[16] https://stories.rivian.com/rivian-autonomy-ai-day
[17] *Id.*

CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

57.    Plaintiffs bring this action on behalf of themselves and all others similarly situated under Fed. R. Civ. P. 23, seeking declaratory relief, injunctive relief, restitution, damages, and other relief specified below, on behalf of the proposed nationwide class and, in the alternative, proposed individual state classes and/or multi-state class (collectively, the "Class"), defined as follows:

**National Class:** All persons who purchased or leased a model year 2022-2024 Rivian R1T or R1S with "Driver+" or that was marketed as featuring Level 3 autonomy or hands-free driving capability (collectively, the "Class Vehicles") at any time from October 1, 2021 through the present ("Class Period "). This class is limited to those individuals that are not subject to Rivian's arbitration agreement and class action waiver.

**California Class:** All persons who purchased or leased a model year 2022-2024 Rivian R1T or R1S with "Driver+" or that was marketed as featuring Level 3 autonomy or hands-free driving capability (collectively, the "Class Vehicles") at any time from October 1, 2021 through the present ("Class Period"), and who either purchased or leased that vehicle in California or who currently resides in California. This class is limited to those individuals who opted out of Rivian's arbitration agreement and class action waiver.

**Michigan Class:** All persons who purchased or leased a model year 2022-2024 Rivian R1T or R1S with "Driver+" or that was marketed as featuring Level 3 autonomy or hands-free driving capability (collectively, the "Class Vehicles") at any time from October 1, 2021 through the present ("Class Period"), and who either purchased or leased that vehicle in Michigan or who currently resides in Michigan. This class is limited to those individuals that are not subject to Rivian's arbitration agreement and class action waiver.

**Wisconsin Class:** All persons who purchased or leased a model year 2022-2024 Rivian R1T or R1S with "Driver+" or that was marketed as featuring Level 3 autonomy or hands-free driving capability (collectively, the "Class Vehicles") at any time from October 1, 2021 through the present ("Class Period"), and who either purchased or leased that vehicle in Wisconsin or who currently resides in Wisconsin. This class is limited to those individuals that are not subject to Rivian's arbitration agreement and class action waiver.

**Multi-State Consumer Protection Class:** All persons who purchased or leased a model year 2022-2024 Rivian R1T or R1S with "Driver+" or

18

CLASS ACTION COMPLAINT

that was marketed as featuring Level 3 autonomy or hands-free driving capability (collectively, the "Class Vehicles") at any time from October 1, 2021 through the present ("Class Period"), and who either purchased or leased that vehicle in any state with consumer protection laws similar to California, Michigan and/or Wisconsin or who currently resides in those states.[18] This class is limited to those individuals that are not subject to Rivian's arbitration agreement and class action waiver.

58.    Excluded from the Class are: Defendants; any entity in which Defendants have a controlling interest; Defendants' officers, directors, employees, agents, legal representatives, and attorneys; the Court and its officers, employees, and relatives.

59.    Plaintiffs reserve the right under Rule 23 to amend or modify the class definitions and/or to add one or more classes or subclasses based on information obtained through discovery.

60.    Members of the Class are readily ascertainable because the Class definitions are based upon objective criteria.

61.    **Numerosity (Rule 23(a)(1))**. The members of the Class are so numerous that joinder of all members is impracticable. On information and belief, Rivian sold or leased tens of thousands of Class Vehicles during the Class Period and are thus too numerous to practically join in a single action. The identities of Class members may

---

[18] While discovery may alter the following, Plaintiffs assert that the other states with similar consumer protection laws under the facts of this case include, but are not limited to: Alaska (AS §§ 45.50.471, *et seq.*); Arkansas (Ark. Code §§ 4-88-101, *et seq.*); Connecticut (Conn. Gen. Stat. §§ 42-110, *et seq*); Delaware (Del. Code Title 6, §§ 2511, *et seq.*); District of Columbia (D.C. Code §§ 28-3901, *et seq.*), Florida (Fla. Stat. §§ 501.201, *et seq.*), Hawaii (Haw. Rev. Stat. §§ 480-1, *et seq.*), Illinois (815 ICLS §§ 501/1, *et seq.*), Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Minnesota (Minn. Stat. §§ 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*); New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law. §§ 349, *et seq.*; §§ 350, *et seq.*); Rhode Island (R.I. Gen. Laws §§ 6-13.1-1, *et seq.*); Vermont (Vt. Stat. tit. 9, §§ 2451, *et seq.*); and Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*). *See Langan v. Johnson & Johnson Consumer Companies, Inc*., 897 F.3d 88, 96 (2d Cir. 2018); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 201, 204 (W.D.N.Y. 2020); *see also Benson v. Newell Brands, Inc.*, 2021 WL 5321510, *9-10 (N.D. Ill. Nov. 16, 2021) (certifying a similar multi-state consumer protection class).

19

CLASS ACTION COMPLAINT

be determined through business records regularly maintained by Rivian, and Class members may be notified of this action through a combination of direct mail, electronic mail, and published notice.

62. **Commonality and Predominance (Rules 23(a)(2) and 23(b)(3))**. Numerous questions of law and fact are common to Plaintiffs and the Class and predominate over any questions affecting only individual Class members. These common questions include, without limitation:

(a) whether Rivian represented that the Class Vehicles were or would be capable of Level 3 autonomy and/or true hands-free driving;

(b) whether Rivian's representations regarding Level 3 autonomy and/or true hands-free driving were false, deceptive, or misleading;

(c) whether Rivian knew, or by the exercise of reasonable care should have known, that its representations were false when made;

(d) whether Rivian concealed or failed to disclose material facts concerning the Class Vehicles;

(e) whether the cost of the Class Vehicles were inflated by the promised Level 3 autonomy and/or true hands-free driving capabilities that never materialized;

(f) whether Rivian's conduct violated the state consumer protection statutes at issue;

(g) whether Rivian's conduct constitutes common law fraud or negligent misrepresentation;

(h) whether Rivian was unjustly enriched at the expense of Plaintiffs and the Class; and

(i) whether Plaintiffs and the Class are entitled to injunctive relief, compensatory damages, restitution, disgorgement, or other remedies.

20

CLASS ACTION COMPLAINT

63.     **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the they seek to represent. Plaintiffs and all Class members purchased Class Vehicles during the Class Period; were exposed to and relied upon Rivian's uniform misrepresentations regarding Level 3 autonomy and/or hands-free driving; and suffered the same or similar injury as a result of Rivian's wrongful conduct. Plaintiffs' claims arise from the same course of conduct by Rivian, and Plaintiffs' legal theories are the same as those of the Class.

64.     **Adequacy (Rule 23(a)(4))**. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests antagonistic to, or in conflict with, the interests of the Class. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and such counsel is prepared to prosecute this action vigorously on behalf of the Class.

65.     **Superiority (Rule 23(b)(3))**. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation against a well-financed corporate defendant such as Rivian, making it impracticable for Class members to individually seek redress for Defendants' wrongful conduct. A class action presents far fewer management difficulties than individual actions and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

66.     **Rule 23(c)(4) Certification**. Certification of particular issues in this action, including issues of liability and relief sought, is appropriate under Rule 23(c)(4) because these issues are common to all Class members, and because resolution of these common issues on a class-wide basis will materially advance the disposition of the litigation as a whole.

CLASS ACTION COMPLAINT

## TOLLING OF STATUTES OF LIMITATIONS

67. To the extent any statute of limitations is applicable to the claims asserted in the Complaint, the running of any such limitations period has been tolled by the discovery rule, the doctrine of fraudulent concealment, equitable estoppel, equitable tolling, and/or other applicable tolling doctrines.

68. Plaintiffs and the Class did not discover, and could not have discovered through the exercise of reasonable diligence, that Rivian's representations regarding Level 3 autonomy and/or hands-free driving capabilities of the Gen 1 Vehicles were false until December 11, 2025, at which time Rivian publicly acknowledged that its new Autonomy+ platform would not be available on the Gen 1 Vehicles as those vehicles were manufactured without sufficient hardware or compute.

69. Prior to purchasing their respective vehicles, the Plaintiffs spent considerable time exploring the Rivian website and information available online, as well as communicating directly with Rivian representatives, to learn about Rivian's autonomous driving capabilities. Plaintiffs read statements on Rivian's website stating that "Level 3 autonomy" and "true hands-free driving" would be available on all Rivian vehicles and were further aware of statements from Rivian salespeople and representatives, including its CEO and founder, confirming the same.

70. The information necessary to determine the truth or falsity of Rivian's representations was uniquely within Rivian's possession and control and was not reasonably available to the average consumer when the Plaintiffs and Class members purchased or leased their respective vehicles.

71. Rivian affirmatively and fraudulently concealed the truth regarding the autonomous driving capabilities of its Gen 1 Vehicles. Rivian continued to represent, in its online marketing materials and through its sales representatives, that Level 3 autonomy and true hands-free driving would be available on the Gen 1 Vehicles, knowing those representations were false. Rivian's conduct prevented Plaintiffs and

22

CLASS ACTION COMPLAINT

the Class from discovering the true facts until recently.

## CLAIMS FOR RELIEF

### COUNT I
### Fraudulent Concealment
### (All Plaintiffs individually and on behalf of all Classes)

72.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-71, above, as though fully set forth in this paragraph.

73.     Rivian made material misrepresentations and omissions to Plaintiffs and the Class members regarding the autonomous driving capabilities of the Class Vehicles, including but not limited to representations that the Class Vehicles were or would be capable of Level 3 autonomy and/or true hands-free driving either at the time of purchase or through subsequent over-the-air software updates.

74.     Rivian's representations were false when made. Rivian knew its representations were false or made them with reckless disregard for their truth or falsity. Rivian had exclusive knowledge of material facts concerning the Class Vehicle's hardware, installed software, and autonomous driving capabilities and limitations of the Driver+ system, and had a duty to disclose those facts to Plaintiffs and the Class members.

75.     Rivian intended for Plaintiffs and the Class members to rely upon its misrepresentations, omissions, and concealment in deciding whether to purchase Class Vehicles. Plaintiffs and the Class members justifiably and reasonably relied upon Rivian's false representations and omissions in making their purchase decisions. Plaintiffs and the Class members would not have purchased their Class Vehicles, or would have paid materially less for their vehicles, had Rivian disclosed the truth.

76.     As a direct and proximate result of Defendants' fraud, concealment, and deceptive conduct, Plaintiffs and the Class members have suffered damages in an amount to be proven at trial.

23

CLASS ACTION COMPLAINT

77.    Rivian's conduct was willful, wanton, malicious, and in conscious disregard of the rights of Plaintiffs and the Class members, warranting an award of punitive damages.

## COUNT II
### Negligent Misrepresentation
**(All Plaintiffs individually and on behalf of all Classes)**

78.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-71, above, as though fully set forth in this paragraph.

79.    Rivian owed a duty to Plaintiffs and the Class members to exercise reasonable care in making representations concerning the capabilities, characteristics, limitations and value of the Class Vehicles, including the autonomous driving capabilities (or lack thereof) of those vehicles.

80.    Rivian breached its duty to Plaintiffs and the Class members by negligently misrepresenting, as part of their marketing campaign, that the Class Vehicles were capable (or would be in the future) of Level 3 autonomy and/or true hands-free driving, when Rivian had no reasonable basis to believe that such representations were true and not misleading.

81.    Rivian intended that Plaintiffs and the Class members rely upon its misrepresentations in making their purchase decisions. Plaintiffs and the Class reasonably relied on Rivian's misrepresentations in deciding to purchase or lease the Class Vehicles.

82.    As a direct and proximate result of Rivian's negligent misrepresentations, Plaintiffs and the Class members have and will continue to suffer damages in an amount to be proven at trial.

## COUNT III
### Unjust Enrichment
**(All Plaintiffs individually and on behalf of all Classes)**

83.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-71, above, as though fully set forth in this paragraph.

24

CLASS ACTION COMPLAINT

84.     Plaintiffs and the Class members paid the value of Class Vehicles that were capable of Level 3 autonomy and/or true hands-free driving at the time of purchase or lease, or would be capable of such autonomous driving within a reasonably short period as a result of the promised over-the-air updates.

85.     In exchange, Rivian provided Plaintiffs and the Class members with Class Vehicles that did not (and could not) meet their reasonable expectations created by Rivian's marketing, representations, concealment and nondisclosure.

86.     Plaintiffs and the Class members conferred a benefit upon Rivian in the form of the purchase price / lease price of the Class Vehicles, a substantial portion of which was attributable to Rivian's representations concerning the autonomous driving capabilities of those vehicles, as well as monthly connectivity/infotainment subscription (*i.e.*, Connect+) fees that are required to utilize many of the vehicles' features, including built-in apps, satellite maps, Rivian's voice assist, as well as to receive certain software updates.

87.     Rivian knowingly accepted and retained these benefits under circumstances that made it inequitable to do so. Rivian obtained money from Plaintiffs and the Class members in exchange for vehicles that materially failed to conform to Rivian's representations and that were materially less valuable than represented by Rivian.

88.     It would be unjust for Rivian to retain the benefits conferred upon them by Plaintiffs and the Class members under the present circumstances.

89.     As a direct and proximate result of Rivian's unjust conduct, Plaintiffs and the Class members have and will continue to suffer economic harm and other loss.

**COUNT IV**
**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***
**(Plaintiff Fritz individually and on behalf of the California Class)**

90.     Plaintiff Fritz re-alleges and incorporates by reference the allegations in

paragraphs 1-71, above, as though fully set forth in this paragraph.

91.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, prohibits any unlawful, unfair or fraudulent business act or practice, including but not limited to any act or practice that constitutes deception, fraud, misrepresentation, or the concealment, suppression, or omission of a material fact in a consumer transaction, or that is likely to deceive the consuming public.

92.    Rivian's conduct as set forth above constitutes unlawful, unfair, and fraudulent business acts and practices in violation of the UCL.

93.    Rivian's wrongful acts and omissions were likely to deceive the consuming public in California and throughout the United States regarding the abilities, limitations, flaws, and value of the Class Vehicles. Rivian's conduct also amounts to deception, fraud, and misrepresentation, concealment, suppression, and omission of material facts in the context of consumer transactions with Plaintiff Fritz and California Class members.

94.    Rivian engaged in "unlawful" business acts and practices by violating: the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; the Federal Trade Commission Act, 15 U.S.C. § 45; and the common law prohibitions against fraud, fraudulent concealment, and negligent misrepresentation.

95.    Rivian's business acts and practices are "unfair" because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers. The harm caused by Rivian's conduct greatly outweighs any countervailing benefits to consumers or competition, and the harm is not outweighed by any benefit that consumers themselves could reasonably have avoided.

96.    Rivian engaged in "fraudulent" business acts and practices by making representations (including failing to disclose and concealing information) about the

CLASS ACTION COMPLAINT

abilities, limitations, flaws, and value of the Class Vehicles that were likely to deceive members of the consuming public. Rivian's representations that the Gen 1 Vehicles were capable of Level 3 autonomy and/or true hands-free driving at the time of purchase or lease, or would be in a reasonably short period of time through over-the-air software updates, were likely to deceive, and did deceive, reasonable consumers.

97.    Rivian's wrongful conduct and the corresponding harm it caused, and continues to cause, was not reasonably avoidable by Plaintiff Fritz, the California Class members, and the consuming public. Rivian, at all relevant times, knew or should have known that Plaintiff Fritz and the California Class members would not have reasonably known or discovered that its representations concerning the capabilities of the Gen 1 Vehicles were false, deceptive, or misleading.

98.    Rivian's false, deceptive, or misleading representations regarding the capabilities, limitations, flaws, and value of the Gen 1 Vehicles' autonomous driving capabilities and technology were material, and Plaintiff Fritz's' and the California Class members' reasonable reliance on the truth and accuracy of those material misrepresentations was a substantial factor in influencing Plaintiff  Fritz and the California Class members to purchase or lease the Class Vehicles.

99.    As a direct and proximate result of Rivian's wrongful conduct and UCL violations, Plaintiff Fritz and the California Class members have suffered an injury in fact and have lost money and property. Plaintiff Fritz and the California Class members seek and are entitled to: injunctive relief; restitution of the full value of all amounts and other consideration that Plaintiff Fritz and the California Class members paid for the Class Vehicles; disgorgement of profits; award of attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5 or any other applicable law; and (e) such other relief that is just and proper.

27

CLASS ACTION COMPLAINT

**COUNT V**
**Violation of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500 *et seq.***
**(Plaintiff Fritz individually and on behalf of the California Class)**

100.    Plaintiff Fritz re-alleges and incorporates by reference the allegations in paragraphs 1-71, above, as though fully set forth in this paragraph.

101.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, prohibits any person from making or disseminating "before the public in this state…in any advertising device…or in any other manner or means whatever…any statement, concerning…personal property…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*. at § 17500.

102.    The Class Vehicles are "personal property" within the meaning of the FAL.

103.    Rivian violated the FAL by making, disseminating, and causing to be made to the public statements about the abilities, limitations, flaws, and value of the Gen 1 Vehicles that were "untrue and misleading" within the meaning of the FAL, and by failing to correct its untrue and misleading representations.

104.    Rivian knew, or by the exercise of reasonable care, should have known about each of its statements at or near the time they were made or disseminated, and at all times thereafter. Rivian knew, or should have reasonably known that its statements were untrue, misleading, and were likely to deceive the public.

105.    Rivian made their untrue and misleading statements with the intent to induce Plaintiff Fritz and the California Class members to purchase Class Vehicles. Plaintiff Fritz and the California Class members were exposed to Rivian's false advertising, relied upon it, and were induced to purchase Class Vehicles as a result.

106.    As a direct and proximate result of Rivian's FAL violations, Plaintiff Fritz and the California Class members have suffered an injury in fact and have lost money and property. Plaintiff Fritz and the California Class members seek and are

28

CLASS ACTION COMPLAINT

entitled to: injunctive relief; restitution of the full value of all amounts and other consideration that Plaintiff Fritz and the California Class members paid for Class Vehicles; disgorgement of profits; an award of reasonable attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5 or any other applicable law; and such other relief that is just and proper.

**COUNT VI**
**Violation of the California Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750 *et seq.***
**(Plaintiff Fritz individually and on behalf of the California Class)**

107. Plaintiff Fritz re-alleges and incorporates by reference the allegations in paragraphs 1-71, above, as though fully set forth in this paragraph.

108. The California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices…undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." *Id*. at § 1770(a).

109. Rivian is a "person" under the CLRA. *See id*. at § 1761(c)

110. Plaintiff Fritz and members of the California Class are "consumers" under the CLRA as they are individuals who acquired, by purchase or lease, Class Vehicles for personal, family, or household purposes. *Id*.

111. The Class Vehicles are "goods" within the meaning of the CLRA. *Id*. at § 1761(a).

112. The purchase of a Class Vehicle is a "transaction" within the meaning of the CLRA. *Id*. at § 1761(e).

113. In advertising Class Vehicles to Plaintiff Fritz and the California Class members, Rivian made an express or implied promise to provide future development of its Driver+ software and technology, future software updates, and other work or labor that constitutes "services" under the CLRA. *See id*. at § 1761(b).

29
CLASS ACTION COMPLAINT

114. Rivian's wrongful acts and practices—including but not limited to its false, misleading, and deceptive marketing, representations, and omissions regarding the capabilities, limitations, flaws, and value of the Class Vehicles—are "unfair and deceptive acts or practices" in violation of the CLRA. *Id*. at § 1770(a).

115. Rivian violated the CLRA by, among other things: (a) representing that the Class Vehicles had characteristics, uses, and benefits they do not have, Cal. Civ. Code § 1770(a)(5); (b) representing that the Class Vehicles were of a particular standard or quality when they are not, *id*. at § 1770(a)(7); (c) advertising the Class Vehicles with the intent that they be sold not as advertised, *id*. § 1770(a)(9); and (d) representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, *id.* § 1770(a)(16). These unfair and deceptive acts were committed knowingly and intentionally.

116. Rivian's unfair or deceptive acts or practices materially affected Plaintiff Fritz's and the California Class members' purchasing and leasing decisions. Rivian's false, misleading, and deceptive marketing, representations, and omissions regarding the Class Vehicles were a substantial factor in Plaintiff Fritz's and the California Class members' decisions to purchase or lease Class Vehicles.

117. A CLRA venue declaration in accordance with Cal. Civ. Code § 1780(d) has been filed contemporaneously with this Complaint.

118. Unless Rivian is enjoined from engaging in the conduct alleged in this Complaint, which violates the CLRA, public consumers will be further harmed by that conduct.

119. As a result of Rivian's CLRA violations and the harm caused by such conduct, Plaintiff Fritz and the California Class members are entitled to and seek injunctive relief to protect the consuming public by prohibiting Rivian from engaging in its past and ongoing acts, omissions and conduct that violate the CLRA; an award of reasonable attorney's fees under Cal. Civ. Code § 1780(e), Cal. Code Civ. Proc. §

CLASS ACTION COMPLAINT

1021.5; and such other relief that is just and proper.

120.  Plaintiff Fritz has, concurrently with the filing of this Complaint, served Rivian with notice under Cal. Civ. Code § 1782(a). To the extent Rivian fails to cure the violations outlined in the notice within 30 days, Plaintiff Fritz will amend this Complaint to seek damages, restitution, injunctive relief, punitive damages, and/or attorneys' fees pursuant to Cal. Civ. Code § 1780(a) and (e). Plaintiff currently seeks only injunctive relief under the CLRA.

**COUNT VII**
**Violation of the Michigan Consumer Protection Act**
**Mich. Comp. Laws §§ 445.901 *et seq*.**
**(Plaintiff Cornellier individually and on behalf of the Michigan Class)**

121.  Plaintiff Jason M. Cornellier re-alleges and incorporates by reference the allegations in paragraphs 1-71, above, as though fully set forth in this paragraph.

122.  The Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 455.903(1) declares that "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful…" Defendants are "persons" under Mich. Comp. Laws § 445.902(d), and their alleged conduct occurred in the course of "trade or commerce" under Mich. Comp. Laws § 445.902(g).

123.  Rivian engaged in unfair, unconscionable and deceptive acts and practices by representing that the Class Vehicles were or would be capable of Level 3 autonomy and hands-free driving when Defendants knew or should have known that such representations were false, and by concealing and failing to disclose material facts concerning the autonomous driving capabilities of the Class Vehicles.

124.  Rivian's actions occurred in the conduct of trade or commerce, affects the public interest, and has the capacity to deceive a substantial portion of the purchasing public.

125.  Plaintiff Cornellier and the Michigan Class members have suffered and will continue to suffer injury, ascertainable losses of money and property, and

31
CLASS ACTION COMPLAINT

monetary and non-monetary damages, including not receiving the benefit of their bargain in purchasing the Class Vehicle as a direct and proximate result of Defendants' unfair, unconscionable and deceptive conduct.

126. Plaintiff Cornellier and the Michigan Class members, pursuant to Mich. Comp. Laws § 445.911 and any other applicable law, seek actual damages, punitive damages, injunctive relief, attorneys' fees and costs.

**COUNT VIII**
**Violation of the Wisconsin Deceptive Trade Practices Act**
**Wis. Stat. §§ 100.18, *et seq.***
**(Plaintiff Sweberg individually and on behalf of the Wisconsin Class)**

127. Plaintiff Sweberg re-alleges and incorporates by reference the allegations in paragraphs 1-71, above, as though fully set forth in this paragraph.

128. The Wisconsin Deceptive Trade Practices Act ("WDTPA"), Wis. Stat. § 100.18(1), provides that "No person, firm, corporation or association…shall make, publish, disseminate, circulate, or place before the public…an advertisement, announcement, statement or representation of any kind to the public…which is untrue, deceptive or misleading."

129. The WDTPA, Wis. Stat. § 100.18(9) further prohibits the publication, dissemination or circulation "an advertisement, announcement, statement or representation of any kind to the public relating to the purchase, sale, hire, use or lease of real estate, merchandise…which advertisement, announcement, statement or representation is part of a plan or scheme the purpose or effect of which is not to sell, purchase, hire, use or lease the real estate, merchandise…as advertised."

130. Defendants are each a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1). Plaintiff Sweberg and the Wisconsin Class members are members of "the public" within the meaning of Wis. Stat. § 100.18(1).

131. Rivian, with the intent to sell, distribute, or increase the consumption of merchandise, services, or anything else offered by Rivian to members of the public,

CLASS ACTION COMPLAINT

deceptively and misleadingly represented that the Class Vehicles were or would be capable of Level 3 autonomy and hands-free driving in violation of Wis. Stat. § 100.18(1). Rivian knew or should have known that such representations were untrue, and by concealing and failing to disclose material facts concerning the autonomous driving capabilities of the Class Vehicles, violated Wis. Stat. § 100.18(1).

132. Rivian's conduct was part of a plan or scheme, the purpose of which was to sell, purchase, or use merchandise or services not as advertised, in violation of Wis. Stat. § 100.18(9).

133. Rivian intended to mislead Plaintiff Sweberg and the Wisconsin Class members and induce them to rely on Defendants' misrepresentation and omissions.

134. Rivian's representations and omissions were material because they were likely to deceive reasonable consumers.

135. Rivian acted intentionally, knowingly, and maliciously to violate the WDTPA, and recklessly disregarded Plaintiff Sweberg's and the Wisconsin Class members' rights.

136. Plaintiff Sweberg and the Wisconsin Class members have suffered and will continue to suffer injury, ascertainable losses of money and property, and monetary and non-monetary damages, including not receiving the benefit of their bargain in purchasing the Class Vehicle as a direct and proximate result of Rivian's unfair, unconscionable and deceptive conduct.

137. Plaintiff Sweberg and the Wisconsin Class members, pursuant to Wis. Stat. § 100.18(11)(b)(2) and any other applicable law, seek and are entitled to actual damages, punitive damages, injunctive relief, attorneys' fees and costs.

**COUNT IX**
**Violation of State Consumer Protection Statutes**
**(All Plaintiffs on behalf of Multi-State Consumer Protection Class)**

138. Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-71, above, as though fully set forth in this paragraph.

CLASS ACTION COMPLAINT

139. Plaintiffs and the Multi-State Consumer Protection Class members were injured as a result of Defendants' violations of the state consumer protection statutes identified in footnote 17, above. These state consumer protection statutes provide a basis for redress to Plaintiffs and the Multi-State Consumer Protection Class based on Defendants' fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

140. Rivian engaged in unfair, unconscionable and deceptive acts and practices by representing that the Class Vehicles were or would be capable of Level 3 autonomy and hands-free driving when Defendants knew or should have known that such representations were false, and by concealing and failing to disclose material facts concerning the autonomous driving capabilities of the Class Vehicles.

141. Rivian's conduct violates the consumer protection, unfair trade practices and deceptive business practices laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

142. Rivian's misrepresentations and other deceptive conduct were likely to deceive and cause misunderstanding and/or, in fact, did cause Plaintiffs and Multi-State Consumer Protection Class members to be deceived about the true nature of the Class Vehicles.

143. Had Plaintiffs and Multi-State Consumer Protection Class members been aware of the true nature of the Class Vehicles, they either would have paid less for the Class Vehicles or would not have made the purchases at all.

144. Plaintiffs and the Multi-State Consumer Protection Class members have suffered and will continue to suffer injury, ascertainable losses of money and property, and monetary and non-monetary damages, including not receiving the benefit of their bargain in purchasing the Class Vehicle as a direct and proximate result of Defendants' unfair, unconscionable and deceptive conduct.

34

CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment against Rivian and the following relief:

a.   An order certifying this matter as a class action, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' counsel to represent the classes;

b.   Declaratory and preliminary and permanent injunctive relief prohibiting Rivian from continuing to engage in acts, omissions, and conduct alleged in this Complaint that violate any law set from in the Claims for Relief for which injunctive relief is available;

c.   An award of all recoverable actual damages, compensatory damages, punitive and exemplary damages and/or other forms of monetary relief provided by law, in an amount determined at trial;

d.   An order awarding Plaintiffs and the Class restitution and disgorgement in an amount determined at trial;

e.   An award of reasonable attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5, Cal. Civ. Code § 1780(e), Mich. Comp. Laws § 445.911, Wis. Stat. § 100.18(11)(b)(2), and any other applicable law;

f.   Awarding pre-judgment and post-judgment interest at the maximum rate allowed by law; and

g.   Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

CLASS ACTION COMPLAINT

Dated: June 17, 2026

/s/ Annick M. Persinger

Annick M. Persinger (CA Bar 272996)
apersinger@tzlegal.com
**TYCKO & ZAVAREEI LLP**
10880 Wilshire Boulevard, Suite 1101
Los Angeles, California 90024
Tel. 510.254.6806

Andrea R. Gold*
agold@tzlegal.com
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20006
Tel. 202.973.0900

Gregory F. Coleman*
gcoleman@gregcolemanlaw.com
S. Jarret Raab*
jraab@gregcolemanlaw.com
Ryan McMillan*
rmcmillan@gregcolemanlaw.com
**COLEMAN LAW, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel. 865.247.0080

*Counsel for Plaintiffs and the Proposed Class*

* *Pro hac vice to be filed*

36

CLASS ACTION COMPLAINT